UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANCHENO,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ORINDA, et al.,<br><br>    Defendants. | Case No. 14-cv-04061-EDL<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 13, 23 |

On November 20, 2014, Defendants filed a motion to dismiss the complaint. Shortly before the hearing on that motion, Plaintiff filed a motion for leave to file an amended complaint. For the reasons set forth below, the Court DENIES Plaintiff's motion, GRANTS Defendants' motion, and dismisses the complaint with prejudice.

## I. MOTION TO DISMISS

### A. Request for judicial notice

Defendants request that the Court take judicial notice of a number of documents indirectly referenced by the complaint including warrants and documents from Plaintiff's state court criminal prosecution. Plaintiff does not oppose Defendants' request and such documents can properly be the subject of judicial notice. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (the Court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)). Consequently, the Court GRANTS Defendants' request.

### B. Relevant Factual Allegations and Procedural history

On August 26, 2012, Plaintiff alleges that a false report about him was made to police by Ali Davoudi and Elizabeth Davoudi. (Cmplt. ¶ 7.) Plaintiff alleges that he has a daughter with Ms. Davoudi, that she is his ex-manager, and that she and Mr. Davoudi have a history of harassing Plaintiff. (Id.) The Davoudi's report was based on an alleged incident that occurred on August 21, 2012, in front of a school that Plaintiff's daughters attend. (See id. ¶ 8.) On September 6, 2012, apparently based on this report, Plaintiff alleges that he was arrested for violating a restraining order prohibiting him from possessing a firearm, brandished a weapon on school grounds, and drawing and/or exhibiting a firearm in violation of California Penal Code sections 626.95(a) and 417(a)(2). (Id. ¶ 6.) Subsequently, Plaintiff alleges that his home was searched based on a false "Narrative Statement of Probable Cause" that led to the filing of criminal charges against him for these penal code violations. (Id. ¶ 9.) Plaintiff ultimately pled no contest to a violation of section 30605(a) (possession of an assault weapon) and was sentenced to three years of probation. (RJN Exs. I, J.)

Plaintiff alleges that Defendant Dennison prepared the "Narrative Statement." (See id. ¶ 13.) Plaintiff alleges that a statement by Defendant Mooney that "established probable cause to issue an arrest warrant" for Plaintiff was included in the "Narrative Statement." (Id.) However, Plaintiff alleges that the document failed to mention that Defendant Mooney was previously fired "for untruthfulness and dishonesty." (Id. ¶ 14.) Plaintiff also alleges that the document included a statement by Joanna Truelson, who apparently obtained a restraining order against Plaintiff, but did not mention her "troubled psychological status" and that she has filed several false police reports against Plaintiff. (Id. ¶¶ 13-15.) Plaintiff also alleges that Defendant Dennison failed to include Ali Davoudi's criminal history in the document. (Id. ¶ 16.)

Plaintiff further alleges that the "Narrative Statement" contained false accusations by Defendant Mooney that, in his prior interactions with Plaintiff, Plaintiff "displayed aggressive, hostile and violent behavior" and that "Plaintiff was not cooperative with law enforcement" and challenged Defendant Mooney to a fight. (Id. ¶ 10.) Plaintiff also alleges that Defendant Mooney viewed exculpatory video footage that revealed no evidence that Plaintiff was in possession of or brandished a firearm, and subsequently ordered that the footage be destroyed. (Id. ¶¶ 17-20.)

2

Plaintiff appears to assert the following claims against Defendants Mooney and Dennison: (1) false arrest (2) malicious prosecution; and (3) a Brady violation for failure to disclose exculpatory information. (Id. ¶¶ 22-24.) Plaintiff also asserts Monell claims against Defendants City of Orinda and Contra Costa County for failure to provide adequate policies, procedures and training. (Id. ¶¶ 25-31.) However, in his opposition to the motion to dismiss, Plaintiff withdrew his malicious prosecution claim and appears to abandon his Monell claim against Defendant Contra Costa County.[1]

**C.  Standard**

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure (12)(b)(1) and (12)(b)(6). A federal court is presumed to lack subject matter jurisdiction unless the contrary affirmatively appears. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). The party seeking to invoke the jurisdiction of the federal court (here, Plaintiff) has the burden of establishing that jurisdiction exists. Westlands Water Dist. Distrib. Dist. v. Natural Res. Def. Council, Inc., 276 F. Supp. 2d 1046, 1049 (E.D. Cal. 2003) (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936) and Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)); see also Shoom, Inc. v. Electronic Imaging Sys. of America, Inc., No. C05-03434 (MJJ), 2006 WL 1529983, *4 (N.D. Cal. June 1, 2006) ("[t]he burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction."). However, dismissals for lack of subject matter jurisdiction in federal question cases are exceptional and must satisfy the requirements outlined in Bell v. Hood, 327 U.S. 678 (1946). Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In that case, the Supreme court held that such dismissals are warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." Id. (quoting Bell, 327 U.S. at 682-83).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual

---

[1] Defendants ask that the Court disregard Plaintiff's opposition because it was filed late. However, because, even considering Plaintiff's opposition, the Court GRANTS Defendant's motion, it need not decide this question.

matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.  Furthermore, a court also need not "accept as true allegations that contradict matters properly subject to judicial notice." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

**D. Discussion**

    **1. The Rooker-Feldman doctrine does not apply**

Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over appeals of state court judgments. See Noel v. Hall, 341 F.3d 1148, 1154-55 (9th Cir. 2003) (discussing emergence of the doctrine).  Historically, "the lower federal courts have variously interpreted the Rooker-Feldman doctrine to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law under 28 U.S.C. § 1738." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).  However, in 2005, the Supreme Court retrenched the doctrine to its original lines:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Id. at 284.  The Rooker-Feldman doctrine has since been construed narrowly and it is limited to situations where a plaintiff alleges a *de facto* appeal by both asserting errors by the state court and

4

seeking relief from the state court judgment as a remedy.  See Exxon Mobil, 544 U.S. at 283; Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

      Significantly, a district court is not barred from exercising subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." Exxon, 544 U.S. at 293.  The Ninth Circuit's formulation of the Rooker-Feldman doctrine in Noel v. Hall speaks to this situation:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

341 F.3d 1148, 1164 (2003).  In Kougasian, the Ninth Circuit cited Noel and emphasized this point: "Rooker-Feldman thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." Kougasian, 359 F.3d at 1140 (emphasis in original).  Kougasian involved allegations of fraud on the state court.  The plaintiff claimed that the defendant had submitted a false declaration in an earlier state court proceeding and refused to supply contact information for the declarant, thereby preventing the plaintiff from questioning him. Id.  The Ninth Circuit observed that:

> At first glance, a federal suit alleging a cause of action for extrinsic fraud on a state court might appear to come within the Rooker-Feldman doctrine.  It is clear that in such a case the plaintiff is seeking to set aside a state court judgment.  But for Rooker-Feldman to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief.

Id.  The Court went on to state that "[e]xtrinsic fraud on a court is, by definition, not an error by that court.  It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." Id. at 1141.

      Here, the Rooker-Feldman doctrine does not prevent the Court from asserting subject matter jurisdiction.  Plaintiff neither alleges an injury stemming from a state court judgment nor seeks relief from such a judgment.  Rather, Plaintiff brings claims against Defendants, two police

5

officers, the City of Orinda, and Contra Costa County, for alleged constitutional violations. These allegations focus on wrongs of the Defendants, not the state court itself, and do not invite "review and rejection" of a state court judgment. See Exxon Mobil, 544 U.S. at 283. Although these claims certainly appear to overlap with the subject matter of Plaintiff's criminal conviction, this overlap is insufficient to deprive this Court of subject matter jurisdiction where Plaintiff does not allege injury from legal errors by the state court. See id.; Kougasian, 359 F.3d at 1143; Noel, 341 F.3d at 1164.[2]

### 2. Heck v. Humphrey bars Plaintiff's Brady and false arrest claims

Under Heck v. Humphrey, 512 U.S. 477 (1994), a plaintiff criminally convicted in state court "cannot recover damages in a § 1983 suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006) (quoting Heck, 512 U.S. at 487). The purpose of this rule is to avoid "parallel litigation over the issues of probable cause and guilt," to "'preclude[] the possibility of the [convicted criminal defendant] succeeding in [a] tort action after having been convicted in [an] underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction,'" and to prevent a "'collateral attack on [a convicted criminal defendant's] conviction through the vehicle of a civil suit.'" Heck, 512 U.S. at 484 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)).

Here, Plaintiff's conviction, based on a plea of no contest, has not been invalidated. See Nuno v. Cnty. of San Bernardino, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999) ("[F]or purposes of the Heck analysis, a plea of nolo contendere in a California criminal action has the same effect as

---

[2] The post-Exxon-Mobil cases cited by Defendants are not to the contrary and are distinguishable. Cooper v. Ramos, 704 F.3d 772, 781 (9th Cir. 2012) involved a direct constitutional challenge to a state court judgment. Defendant's other cases, Thompson v. Santa Cruz County, 2013 U.S. Dist. LEXIS 58307 (N.D. Cal. April 23, 2013), Ismail v. County of Orange, 2012 U.S. Dist. LEXIS 119989 (C.D. Cal. June 11, 2012), and Miramontes v. Zellerbach, 2014 U.S. Dist. LEXIS 25183 (C.D. Cal. Jan. 10, 2014), similarly involved federal challenges to state court judgments.

a guilty plea or jury verdict of guilty.").

      a. Plaintiff's Brady claim is barred by Heck

In order to state a claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Plaintiff must show that "the nondisclosure prejudiced" him. Smith v. Almada, 640 F.3d 931, 939 (9th Cir. 2011). This is because "'there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" Id. (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

Plaintiff's Brady claim appears to be based on the surveillance video that allegedly showed that Plaintiff was not carrying a firearm at the school. (Cmplt. ¶¶ 19, 24.) As an initial matter, Plaintiff was only convicted of possession of an assault weapon, the evidence for which appears to have stemmed from a search of his home – not the school incident directly. (See RJN Exs. A-C.) Thus, it is unlikely that Plaintiff can demonstrate prejudice. However, assuming that he can, Plaintiff's claim is barred because Heck applies to "[a] claim alleging a constitutional violation under Brady v. Maryland." Rodriguez v. Kwok, 2014 U.S. Dist. LEXIS 69248, at *6 (N.D. Cal. May 20, 2014) (Illston, J.); Williams v. L.A. County Superior Court, 2008 U.S. Dist. LEXIS 112208, at *18-19 (C.D. Cal. Dec. 3, 2008) ("Plaintiff may not pursue Section 1983 claims against persons who allegedly suppressed material impeachment evidence during his criminal proceedings unless and until he succeeds in invalidating his conviction through other means").[3]

      b. Plaintiff's False Arrest claim is also barred by Heck

---

[3] The non-binding cases on which Plaintiff relies are inapposite. United States v. Rigas, 377 F.3d 195 (2d Cir. 2004) and Loria v. Gorman, 306 F.3d 1271 (2d Cir. 2002) do not address the relationship between Brady and Heck. Furthermore, the Second Circuit has subsequently stated that it: "has emphatically and properly confirmed that Brady-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the Brady violation occurred. . . . That should come as no surprise; the remedy for a Brady violation is vacatur of the judgment of conviction and a new trial." Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014). Similarly, White v. McKinley, 605 F.3d 525 (8th Cir. 2010) and Segwick v. Superior Court of D.C., 584 F.2d 1033 (D.C. Cir. 1978) do not address Heck. Furthermore, a prior Eighth Circuit case, Moore v. Novak, 146 F.3d 531, 536 (8th Cir. 1998), applied the Heck bar to allegations that, similar to this case, a potentially exculpatory videotape was destroyed. See also Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996) (applying Heck bar to Brady claims alleging the destruction of exculpatory evidence.) Furthermore, courts in this circuit have squarely held that the Heck bar applies to a Brady claim alleging constitutional violations. Ciria v. Rubino, 2008 U.S. Dist. LEXIS 70229, *8-18 (N.D. Cal. Sept. 17, 2008) (Chesney, J.); Rodriguez, 2014 U.S. Dist. LEXIS 69248, at *6 (Illston, J.); Williams, 2008 U.S. Dist. LEXIS 112208 at *18-19.

7

The Heck bar also applies to false arrest claims. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him. . . . . [F]inding there was no probable cause would 'necessarily imply' that [plaintiff's] conviction for disturbing the peace was invalid. Therefore, under Heck, [Plaintiff's] false arrest and imprisonment claims [are] not cognizable."); see also Frost v. City & County of San Francisco, 2006 U.S. Dist. LEXIS 37453, at *10-11 (N.D. Cal. June 8, 2006). Here, Plaintiff alleges that he was falsely arrested for violating a restraining order (to not possess a firearm), brandishing a weapon on school grounds and exhibiting a firearm. Plaintiff was convicted of unlawfully possessing an assault weapon. Thus, Plaintiff's claim is barred because a verdict in Plaintiff's favor would "negat[e] the basis for the arrest that led to [Plaintiff's] conviction." Frost, 2006 U.S. Dist. LEXIS 37453, at *10.

In response, Plaintiff argues that Wallace v. Kato, 549 U.S. 384 (2007), somehow prevents the application of Heck in this case. However, that case pertains to the statute of limitations for § 1983 false arrest claims and is not relevant here. Furthermore, the case confirms that Heck requires dismissal of a false arrest claim where the civil suit would impugn a criminal conviction. Id. at 394. Additionally, the allegations in the complaint do not limit this claim to "the arrest of plaintiff up to the period of his arraignment" as Plaintiff argues. (Opp. at 7.) Even if they did, there is no significance to this argument. The issue here is whether or not the officers had probable cause to arrest Plaintiff and a finding of no probable cause would necessarily imply that Plaintiff's conviction was invalid. See Cabrera, 159 F.3d at 380; Frost, 2006 U.S. Dist. LEXIS 37453, at *10-11.

**3. The Younger abstention doctrine does not apply**

Defendants' Younger argument is based on their contention that Plaintiff is appealing his state court criminal conviction. (See RJN Ex. K.) However, Plaintiff states that the he is not appealing his criminal conviction. Rather, the appeal to which Defendants refer is of "a restraining order by the state court against [Plaintiff] after his criminal conviction was complete." (Opp. at 14.) Defendants appear to concede the inapplicability of this doctrine as they do not

argue Younger in their reply.

### 4. Failure to State a Claim

Because the Court finds that Plaintiff's claims against Officers Mooney and Dennison are barred by Heck, it does not address Defendants' arguments that Plaintiff has failed to state a claim for false arrest and violations of Brady. This leaves Plaintiff's Monell claim against Defendant City of Orinda.[4] Under Monell, a plaintiff seeking to impose liability on a municipality pursuant to § 1983 must:

> identify a municipal 'policy' or 'custom' that caused the plaintiff's injury. . . . Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403-04 (1997). Here, Plaintiff alleges that Defendant has inadequate policies in place regarding handling exculpatory evidence, conducting criminal investigations, and not bearing false witness and that the "lack of adequate supervisorial training and or policies and procedures is so gross that it demonstrates the existence of an informal custom of [sic] policy of promoting, tolerating, and ratifying of the above-mentioned misconduct." (Cmplt. ¶¶ 27-28, 30.)

Plaintiff fails to state a claim. First, Plaintiff has not sufficiently alleged that an employee violated Plaintiff's constitutional rights. As explained above, Heck prevents this Court from reaching such a conclusion. Thus, Plaintiff's Monell claim must fail. See Brown, 520 U.S. at 404 (Monell plaintiffs must prove a constitutional injury). Furthermore, Plaintiff's claim fails for a number of other reasons: (1) Plaintiff does not allege ratification of the allegedly deficient policies by an authorized policy maker. Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) ("To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's

---

[4] Although the complaint alleges Monell claims against Defendant Contra Costa County as well, Plaintiff's opposition does not mention this Defendant. Consequently, it appears as if Plaintiff intends to abandon his claims against Contra Costa County. Regardless, the Court's analysis applies equally to Defendant Contra Costa County as it does to Defendant City of Orinda.

decision and the basis for it.'" (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988))); (2) Plaintiff merely alleges an isolated incident and does not allege a basis for inferring a longstanding custom or practice. Id. at 1235 ("'Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'" (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996))); and (3) Plaintiff's allegations with regard to causation are too conclusory to establish a link between Defendant City of Orinda's allegedly deficient training and Plaintiff's alleged constitutional injury. See Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011) (dismissing a complaint that "lacked any factual allegations regarding key elements of the Monell claims, or, more specifically, any facts demonstrating that [plaintiff's] constitutional deprivation was the result of a custom or practice of the [defendant] or that the custom or practice was the 'moving force' behind his constitutional deprivation.").

## II.  MOTION FOR LEAVE TO AMEND

Plaintiff moves for leave to file an amended complaint that adds an additional claim that Defendants retaliated against Plaintiff in violation of the First Amendment because he filed a complaint against one of the Defendants. Plaintiff alleges that Defendants retaliated by causing the criminal charges to be brought against him. (Dkt. 23-1 (Proposed Amended Complaint) ¶ 25.) Defendants, citing Heck, argue that leave to amend should be denied because it would be futile. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend. . . . [A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

Plaintiff's proposed new claim alleges that Defendants induced the prosecution of Plaintiff and is thus a claim for retaliatory prosecution. See Hartman v. Moore, 547 U.S. 250, 262-63 (2006). An essential element of this claim is a showing that there was no probable cause for pressing the underlying criminal charges. Id. at 265-66 (holding that "an absence of probable cause . . . must be pleaded and proven"); Paul v. City of Sunnyside, 405 F. App'x 203, 206 (9th

Cir. 2010) (affirming a grant of summary judgment against the plaintiff on a retaliation claim where the defendants "had probable cause to charge" plaintiff).

As previously explained, Plaintiff alleges that he was falsely arrested for violating a restraining order (to not possess a firearm), brandishing a weapon on school grounds, and exhibiting a firearm. Plaintiff was convicted of unlawfully possessing an assault weapon. Although Plaintiff argues that this conviction was based on "distinct" facts, a finding of no probable cause to arrest on these charges would necessarily imply that Plaintiff's conviction for possessing an assault weapon was invalid. See Cabrera, 159 F.3d at 380; Frost, 2006 U.S. Dist. LEXIS 37453, at *10-11. Therefore, Plaintiff's retaliation claim is barred by Heck.[5] See Smith v. Ball, 278 F. App'x 739, 741 (9th Cir. 2008) (finding a First Amendment retaliation claim barred by Heck "because prevailing on [plaintiff's] claim would imply the invalidity of her criminal convictions arising from the same events"); Golt v. City of Los Angeles, 214 F. App'x 704, 706 (9th Cir. 2006) ("Any determination by this court that [plaintiff's] arrests and convictions were effected only for retaliatory purposes would necessarily imply the invalidity of [her] conviction[s], and that would be contrary to Heck." (internal quotation marks omitted)). Furthermore, Plaintiff's Monell claim based on the alleged retaliation fails because Heck precludes Plaintiff from proving an underlying injury. See Brown 520 U.S. at 404 (an essential element of a Monell claim is that plaintiffs must allege an injury).

Plaintiff's citations to Hooper v. San Diego, 629 F.3d 1127 (9th Cir. 2011) and Yount v. City of Sacramento, 43 Cal. 4th 885 (2008) for the general proposition that sometimes different factual contexts can exist within one continuous chain of events is not to the contrary. Both cases involve the application of Heck to excessive force claims and Plaintiff asserts no such claim here.

### III. CONCLUSION

Defendants' motion to dismiss is GRANTED. Because Plaintiff's claims are barred by

---

[5] The Court is not persuaded by Plaintiff's argument that without discovery there is insufficient information to determine whether the retaliation claim is Heck barred. As previously mentioned, Plaintiff's claim requires a finding of no probable cause for the underlying criminal charges, which all involve possession of a firearm; such a finding would necessarily imply that Plaintiff's conviction, for possession of a firearm, was invalid.

Heck, leave to amend would be futile. Therefore, the complaint is dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: February 12, 2015

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge